**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**DALE LEE THOMAS,**

**Petitioner,**

**v.**

**J. WADAS,**

**Respondent.**

**Case No. 26-CV-850-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Petitioner Dale Lee Thomas, an inmate in the custody of the Bureau of Prisons at FCI Marion, brings this petition for writ of habeas corpus under 28 U.S.C. § 2254 to challenge a detainer issued by the State of Maryland. For the reasons set forth below, the petition is dismissed without prejudice.

## BACKGROUND

Thomas is serving a 78-month sentence imposed by the Superior Court for the District of Columbia. (Doc. 10-1, pp. 2-3). He is presently scheduled to be released from BOP custody on October 19, 2026. (*Id.*). Complicating his release plans, however, is a detainer issued by Prince George's County in Maryland on August 6, 2024, for several pending charges, including possession with intent to distribute, resisting arrest, assault, disorderly conduct, obstructing, and possession—not marijuana. (*Id.* at pp. 99-105).

The Interstate Agreement on Detainers ("IAD"), 18 U.S.C. app. § 2—a compact joined by 48 states, the United States, and the District of Columbia governing the transfer

of criminal defendants among participating jurisdictions—affords individuals, like Thomas, certain rights. *See Reed v. Farley*, 512 U.S. 339, 341 (1994). As the Seventh Circuit has explained, "[t]he Act allows prisoners to demand the speedy disposition of charges pending against them in other jurisdictions, and serves 'to prevent prosecutorial abuses of the detainer that potentially allow a prisoner to languish in a separate jurisdiction under the constant but uncertain threat of further prosecution.'" *United States v. Donaldson*, 978 F.2d 381, 390 (7th Cir. 1992) (quoting *United States v. Kurt,* 945 F.2d 248, 251 (9th Cir. 1991)).[1]

Under the IAD, a prisoner's custodian "shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." 18 U.S.C. app. § 2, art. III(c). If a prisoner requests final disposition of an untried indictment, information, or complaint, and gives appropriate notice to the required State officials, "he shall be brought to trial within one hundred and eighty days," "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Id.* app. § 2, art. III(a). If a defendant is not brought to trial or taken into temporary custody by the requesting jurisdiction within the applicable statutory period, the IAD requires that the indictment, information, or complaint be dismissed with

[1] In Article I, the compacting jurisdictions made their motivation explicit, noting that "detainers based on untried indictments . . . and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, *produce uncertainties which obstruct programs of prisoner treatment and rehabilitation*." 18 U.S.C. app. § 2, art. I (emphasis added).

prejudice. *Id.* app. § 2, art. V(c); *United States v. Dawn*, 900 F.2d 1132, 1136 (7th Cir. 1990) ("The sanction for failure to bring the defendant to trial within the 180 day period is dismissal of the indictment with prejudice.").

Thomas received notice of the Maryland detainer from the warden of FCI Marion on August 7, 2024. (Doc. 10-2, p. 107). He promptly elected to exercise his rights under the IAD for disposition of the Maryland charges, and prison staff forwarded notice to the state's authorities on September 10, 2024. (*Id.* at pp. 106, 111-12). The letters were delivered to Maryland State's Attorney Aisha Braveboy, Maryland Clerk of Court Kelly Donoho, and IAD Administrator Mahasin El Amin on September 16, 2024. (*Id.* at p. 106). BOP staff sent a follow-up letter to the Maryland officials on November 25, 2024, noting that no response had been received and that the deadline under the IAD to try Thomas on the state charges was March 15, 2025. (*Id.* at p. 114). To date, the BOP has not received any response from Maryland, according to Correctional Systems Officer Emily Baker. (Doc. 10-2, p. 3).

In December 2025, Thomas submitted a grievance to FCI Marion officials "seeking the final disposition" of the Maryland case before the conclusion of his term in federal custody. (Doc. 10-3, p. 7). BOP staff informed him that they had processed his IAD request in a timely fashion, but they could not control "outside agenc[ies] placing detainers or removing detainers." (*Id.* at p. 9). In February 2026, FCI Marion's warden denied Thomas's request for an administrative remedy on similar grounds. (*Id.* at p. 6). There is no record that Thomas appealed the denial of his administrative remedy to the appropriate BOP Regional Officer. (*Id.* at p. 3).

Instead, Thomas filed a petition for a writ of habeas corpus in this Court on June 15, 2026, naming the warden of FCI Marion as the Respondent. (Doc. 1).[2] Thomas argues that the pending Maryland charges should be dismissed with prejudice, that its detainer should be vacated, or that any sentence resulting from the Maryland charges should run concurrently with his current sentence. (*Id.* at p. 8). Although Thomas filed his petition on a form labeled "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241," the undersigned construed it as a petition brought pursuant to § 2254. *See* (Doc. 6 (citing *Esposito v. Mintz*, 726 F.2d 371, 372-73 & n.4 (7th Cir. 1984) (explaining that a § 2254

[2] As an aside, it is not altogether clear that Thomas named the correct respondent in this action. Under the habeas statute, a petitioner must allege "the name of the person who has custody over him." 28 U.S.C. § 2242. Furthermore, a district court shall direct the writ "to the person having custody of the person detained." *Id.* § 2243. For challenges to "present physical confinement," "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). However, the analysis is more nuanced for situations, like this one, where a petitioner "challenges a form of 'custody' other than present physical confinement." *Id.* at 438. Such was the situation before the Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973). In that case, an Alabama prisoner challenged the validity of a detainer lodged against him in Kentucky. *Braden*, 410 U.S. at 487-88. Because the prisoner's challenge to the detainer dealt with a form of future custody, the Court held that the Kentucky court that issued the detainer was the proper respondent rather than his physical custodian in Alabama. *See id.* at 498-99; *Padilla*, 542 U.S. at 438 ("Under *Braden,* then, a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'"); *Kholyavskiy v. Achim*, 443 F.3d 946, 949 n. 2 (7th Cir. 2006).

Under the reasoning of *Braden* and *Padilla*, it would seem that the proper respondent for Thomas's claim is an official in Maryland rather than the warden of his BOP facility. In *Esposito*, the Seventh Circuit's seminal case on IAD claims presented on federal collateral review, the court of appeals appears to have overlooked whether the Wisconsin respondent was properly named as the respondent with respect to the petitioner's claims regarding his Florida detainer. *See* 726 F.2d at 372. But as the Sixth Circuit has emphasized, *Braden*'s lesson is that a petitioner in similar circumstances "must sue the state court that exercises legal control with respect to the challenged custody" rather than his federal warden. *Gilmore v. Ebbert*, 895 F.3d 834, 837 (6th Cir. 2018) (cleaned up).

Because the Court concludes that Thomas is not entitled to relief in light of his failure to exhaust his remedies in state court, the issue is of little moment to the resolution of this case. However, future petitioners likely would be wise to follow the guidance of Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts and "name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered."

petition is the proper way to challenge the validity of a detainer where the challenge does not implicate any conditions of a petitioner's federal incarceration); *Iverson v. True*, No. 18-CV-1532-NJR, 2018 WL 4215070, at *2 (S.D. Ill. Sept. 5, 2018)).[3]

Respondent appeared and filed a brief urging the Court to dismiss the petition on the ground that Thomas must pursue relief in Maryland state court. Respondent also argues that Thomas failed to properly exhaust his administrative remedies to the extent he challenges how BOP handled the detainer and says that BOP cannot provide any further relief in any event. Thomas did not file a reply brief.

The Court agrees that the petition must be dismissed. Thomas does not allege any fault on the part of BOP in informing Maryland of his request for a timely disposition of its charges against him. Instead, he complains of an "unreasonable delay" by *Maryland officials* in responding to his request for a final disposition and "potential statutory and due process concerns arising from prolonged inaction." (Doc. 1, pp. 6-7).

Certainly, Maryland's alleged failures to timely bring Thomas to trial in violation of the IAD may supply a basis for relief under § 2254(a), as a "law[] . . . of the United States." *See Pharm v. Waters*, No. 07C0414, 2008 WL 4831095, at *2 (E.D. Wis. Nov. 5, 2008); *see also Webb v. Keohane*, 804 F.2d 413, 414 (7th Cir. 1986). However, courts have generally held that habeas relief for IAD claims is available only in situations where there are aggravating circumstances, not for mere technical violations alone. *See Reed*, 512 U.S. at

[3] Although Thomas notes that the detainer has affected his ability to receive certain benefits while in federal custody (Doc. 1, p. 7), he does not place these matters directly at issue in his present petition and focuses only on the existence and validity of the detainer. *Cf. Iverson*, 2018 WL 4215070, at *2.

342 ("We hold that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement."); *Allen v. Miller*, 103 F.3d 133, at *1 (7th Cir. 1996) (table); *United States ex rel. McDonald v. Hulick*, No. CIV A 06 C 5762, 2007 WL 967934, at *5 (N.D. Ill. Mar. 28, 2007); *see also Fulgham v. Crow*, 838 F. App'x 355, 359 (10th Cir. 2020) ("We have held that rights created by the IADA are statutory, not fundamental, constitutional, or jurisdictional in nature"—and, thus, an IADA violation might be grounds for collateral attack on a conviction and sentence *only* if special circumstances exist in a particular case." (cleaned up)).

The Court need not assess whether Thomas' allegations satisfy that standard, however, because he does not allege that he exhausted his claims in state court. As is the case for other claims brought under § 2254 concerning state judgments, Thomas "must show that he has exhausted available state remedies before applying to a Federal district court for relief." *Esposito*, 726 F.2d at 373; *see also Cain v. Petrovsky*, 798 F.2d 1194, 1195 (8th Cir. 1986). This requirement is embodied in the text of § 2254 itself, which states that a writ of habeas corpus "shall not be granted unless it appears that" the petitioner "has exhausted the remedies available in the courts of the State" or a State remedy is either unavailable or ineffective. 28 U.S.C. § 2254(b). Thomas has not described any efforts to exhaust his claim in Maryland or explained why the exhaustion requirement should be disregarded here. Notably, Article V(c) of the IAD, which sets out the remedial mechanism for violations of the Compact's deadlines, specifies that the dismissal of the

pending charges must come from "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending." 18 U.S.C. app. § 2, art. V(c). Thus, the IAD itself suggests that Thomas must start in Maryland. Fortunately for Thomas, to the extent his claims have merit, Maryland courts appear to vigorously enforce the state's obligations under the Compact. *E.g.*, *State v. Meadows*, 261 Md. App. 464, 498, 314 A.3d 395, 415 (2024); *State v. Pair*, 416 Md. 157, 177, 5 A.3d 1090, 1101 (2010).[4] Unfortunately, given the short time remaining in his federal sentence, Thomas likely will have to raise the issue with his Maryland defense attorney once he arrives in that state.

## CONCLUSION

For these reasons, the Petition for Writ of Habeas Corpus filed by Dale Lee Thomas (Doc. 1) is **DISMISSED without prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability is required to appeal from the dismissal or denial of a Section 2254 petition. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate of appealability to

[4] Because Thomas clearly failed to properly exhaust his IAD claims, the Court need not address Respondent's alternative arguments that he failed to exhaust his administrative remedies and that BOP fully complied with its obligations under the Compact.

issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 580 U.S. 100, 115 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would debate this Court's ruling that Thomas failed to exhaust his state remedies. Accordingly, the Court denies a certificate of appealability. Thomas may reapply to the United States Court of Appeals for the Seventh Circuit for a certificate of appealability if he wishes to pursue an appeal. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

## Notice of Appellate Rights

If Thomas wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Thomas chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned has already declined to issue a certificate of appealability. So, Thomas must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed

from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Thomas files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Thomas cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Thomas plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Thomas wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to

amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Thomas showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED: September 1, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**